**UNITED STATES of America**

v.

**Jerry Ray JAMES et al.**

**No. CR-67-421-DR.**

United States District Court
W. D. Texas,
Del Rio Division.

March 14, 1969.

As Amended March 26, 1969.

Arturo C. Gonzales, pro se, John R. Foster, pro se, Del Rio, Tex., John W. Claybrook, pro se, Jeremiah Ingels Rhodes, pro se, Eagle Pass, Tex., Taylor Nichols, pro se, Uvalde, Tex., George M. Thurmond, pro se, Del Rio, Tex., James R. Gillespie, pro se, San Antonio, Tex., Haygood Gulley, pro se, Del Rio, Tex., Max P. Flusche, pro se, Austin, Tex., V. F. Knickerbocker, pro se, Midland, Tex., for claimants.

Ernest Morgan, U. S. Atty., Ralph H. Harris, III, Asst. U. S. Atty., San Antonio, Tex., for Government.

## MEMORANDUM

SUTTLE, District Judge.

The hereinafter named attorneys have submitted Vouchers for Compensation.

and Expenses of Appointed Counsel, CJA Form 4, for allowance of attorneys' fees and expenses under the Criminal Justice Act, 18 U.S.C. § 3006A.[1] Each of the claims is for an amount in excess of the statutory limitation for compensation. As to each, the Court certifies that the amount approved represents fair compensation for protracted representation and that payment is necessary under the extraordinary circumstances of this case, and attaches a CJA Form 5 to that effect to each claim. This memorandum is entered in order to delineate the circumstances necessitating the services rendered and this Court's certification of their character, as well as to record this Court's reasons for allowing or rejecting, as the case may be, various categories of compensation.

## I.

The attorneys appointed in this case began submitting Vouchers for partial compensation during the course of the trial.[2] Being of the opinion that approval of any claim above the statutory maximum should wait until an attorney's representation was ended and the trial and his services could be viewed as a whole, the Court did not act on the partial claims. Final Vouchers were submitted by early August, after the trial ended June 25, 1968. Upon examination, the Court found several serious questions upon which there was little if any authority, and determined that a hearing should in all fairness be required, so that counsel involved could apprise the Court of the circumstances underlying each questionable claim. Finding further that some claims were not supported by an adequate "written statement,"[3] the Court denominated the hearing "evidentiary" so that counsel could submit any records or testimony they might wish in support of the time, services and expenses for which compensation or reimbursement was sought. Feeling further that the representatives of the Government who had handled the trial of the case could also aid the Court, both as to applicable law and as to what happened, and when, during the case, it was ordered that they be present at the hearing.[4]

Such a hearing was set by the Court by written order entered September 20, 1968, a copy of which is attached. After some delay, because of conflicting obligations of counsel, the contemplated "hearing" was held on November 22, 1968, with all appointed and Government counsel involved present and participating. After some preliminary discussion, a procedure was evolved whereby each attorney would take the stand and explain his position and claim, with whatever further explanation was thought useful by the Court and the U. S. Attorney. Memoranda of authorities were requested from all participants, and the same were submitted by appointed and Government counsel by January 15, 1969.

While the procedure used had some of the formal trappings of advocacy, the matter was not treated by the Court as adversary. The "hearing" was held in order to get all of the relevant circumstances before the Court, with opportunity to explore the different factors involved. While the matter could well have been handled more informally, the Court found the orderly proceedings attendant

---

1. Hereafter referred to as "C.J.A."

2. See 18 U.S.C. § 3006A(d) ("An attorney appointed pursuant to this section * * * shall, at the conclusion of the representation or any segment thereof, be compensated * * *.")

3. See 18 U.S.C. § 3006A(d) ; Plan for the United States District Court for the Western District of Texas, Pursuant to the Criminal Justice Act of 1964, adopted February 2, 1965, ¶ 4, a copy of which is attached to this Memorandum.

4. In a letter to the Court on October 11, 1968, the U.S. Attorney expressed the view that he should not be required to act as an advocate in the determination of the reasonableness of claims for fees or expenses under the C.J.A., but added that he would perform whatever function in the matter that the Court felt would be of help. His final brief in the matter echoes this view.

to the adversary-type hearing useful in organizing and exploring the various positions of all involved, and finds that the resulting record presents an organized and complete view of each attorney's position. All of the participants were cooperative and the entire proceeding was very helpful to the Court in discovering the many factors which the Court now feels should be taken into consideration in determining the matter before him, and which are outlined below.

## II.

■ The Court certifies that the services rendered by these attorneys amount to protracted representation. There can be no doubt of this, or that this case represents the type of "extraordinary circumstances" which justify payment in excess of the limit set out in 18 U.S.C. § 3006A(d).

The indictment in this case, returned October 24, 1967, charged twenty defendants in one count with having conspired to commit various offenses against the United States.[5] The five-page charge alleged six "objects" of the conspiracy,[6] followed by seven "parts," describing the method of operation of the conspiracy, and fifteen overt acts in furtherance of said conspiracy. Through bills of partic-

ulars the Court and defense counsel learned that the Government intended to rely on the burglaries or attempted burglaries of some eighteen banks and two residences, and the armed robbery of a "Club" in Mississippi, and that the Government deemed eight other persons, not named in the indictment, to be coconspirators in the case.

The defendants began to be arraigned December 28, 1967, and some appointed counsel made their first appearance in the case on that day. The Court began hearing the first group of pre-trial motions on January 24, 1968. Trial was set for February 19, 1968, but was repeatedly postponed as the Court heard further pre-trial motions until the case was transferred for trial to the El Paso division on March 18, 1968. All counsel participated in all of the pretrial proceedings.[7] Upon announcement by the Court that the case was to be transferred for trial to another Division, all local Court-appointed attorneys moved to be released.[8] Where the motions contained the consent of the defendant involved and of an attorney already in the case to take over the representation of the defendant, they were granted.[9] Where this was not the case, and another attorney would have to be appointed in El Paso, they were denied.[10] As a result, several coun-

5. Under 18 U.S.C. § 371.

6. The alleged objects were to violate 18 U.S.C. §§ 1952, 2113(a), 2113(b), 2113(c), and 2314. The jury found that a conspiracy existed and, by special interrogatories, that the objects were as alleged except for violation of 18 U.S.C. § 1952, which they found was not an object thereof.

7. By order of February 19, 1968, the Court charged each counsel with knowledge of all motions filed in the case, and required the presence and participation of all, unless excused by the Court after receiving a waiver of whatever prejudice might result from absence.

8. One attorney did not specifically move to be released from his appointment. Approaching the problem of being forced to go to El Paso differently, he obtained, by agreement with the government, a severance, and finally dismissal of his client. See Part VI, *supra.*

9. Plan for the United States District Court for the Western District of Texas, *supra* n. 3, at ¶ 2(d) reads in part:
"The Court may, in the interest of justice, substitute one appointed counsel for another at any stage of the proceedings."

10. The Court felt that no amount of preparation of an attorney entering the case at this point could substitute for the perspective gained by counsel who had participated in the lengthy pretrial proceedings. Further, the delay involved in new counsel trying to prepare for what everyone knew at this point was to be a lengthy trial would work to the prejudice of all defendants. Thus, for the substitution to serve the "interests of justice," the Court required that new counsel must have been a participant in the pre-trial proceedings in the case. The consent of the indigent defendant involved was, of course, crucial.

sel who had been employed in the case went to El Paso further representing an indigent defendant under the C.J.A. Two attorneys from Del Rio, Texas, both appointed under the C.J.A., went with the case also. Since two defendants had been dismissed with regard to these charges, and two had been severed, at the time the case was called in El Paso there were 16 defendants, represented by seven attorneys, six of whom had at least one indigent client.[11]

On April 4, 1968, the case was called and further pretrial matters were heard and disposed of, including denials of motions of the two Del Rio attorneys to be released. On April 8, 1968, after another defendant was severed, and, over announcements of "not ready" by defendants' counsel, the jury was selected and the trial began. The trial continued until verdict was reached on June 25, 1968.[12] Of the 15 defendants who went to trial, one was granted a mistrial during the government's case, four were granted judgment of acquittal by the Court at the end of the government's case in chief, four more were acquitted by the jury, and six were found guilty [13] and sentenced under 18 U.S.C. § 4208 (b).[14]

During the trial, from April 8, 1968, to June 25, 1968, the Court and jury heard more than 140 witnesses. There were over 400 exhibits admitted into evidence. During the entire proceedings, there were over 800 documents filed with the Clerk, including several hundred motions heard and determined by the Court. More than 60 days were actually spent in Court.

11. During the first month of trial, the one attorney who did not represent an indigent was allowed to withdraw because of a death in his immediate family. His client, by consent of all concerned, was thereafter represented by another attorney who was representing an indigent. See Part XII, *supra*. This left six attorneys in the case, all of whom had at least one indigent client.

12. The Court recessed the trial for the weeks of April 15–19 and June 3–7 for other judicial business. While this may seem unusual, it was done advisedly and was a well neded break for all on both occasions. The release from the tension which built up during the trial far outweighed inconvenience, if any.

13. Thus, of the 20 defendants named in the indictment, each was disposed of as follows:

| | |
|---|---|
| Jerry Ray James | Convicted |
| Chester Arthur Schutz | Convicted |
| Clifford Henry Bowen | Convicted |
| James Timothy Overton | Convicted |
| Darrell Wayne Overton | Acquitted by Court |
| Benjamin Thomas Tisdale | Convicted |
| Walter Bernard Korn | Dismissed by Court |
| Travis Roy Erwin | Acquitted by Court |
| Harben Leonard Stanley | Severed; Dismissed by Gov't. |
| Dale Norwood Hall | Convicted |
| Curtis Glenn Garrett | Acquitted by Jury |
| William Robert Brown | Dismissed by Court |
| Mary Farmer | Acquitted by Jury |
| Elizabeth Agnes Sherman | Acquitted by Court |
| Joan Dobbs Taylor | Severed; Dismissed by Gov't. |
| Sue Overton | Acquitted by Jury |
| Judith Ann Cathy | Acquitted by Court |
| Mildred Ross | Mistrial; Dismissed by Gov't. |
| Fred Clinton Hedges | Acquitted by Jury |
| Jerry Wix Lemond | Severed; Case Pending |

14. While the reports and recommendations of the Director of the Bureau of Prisons have been received by the Court, the defendants have not been resentenced.

Whether an attorney was in the case only at pretrial proceedings or only during the trial or both, his representation must be classified as protracted and the circumstances extraordinary.[15] The case was a mental and physical strain on everyone involved, as well as a financial hardship to the attorneys, as will be discussed below. A recitation of the above facts should suffice. Under whatever standard of "protracted" and "extraordinary" we may wish to apply, this is clearly a case where the statutory maximum must give way to the circumstances of the case and each attorney's part in it.

### III.

The only real questions presented by the Vouchers center around the words of discretion in the statute concerning time "reasonably" expended in preparation out of Court, expenses "reasonably" incurred, and, in each particular case, how much is "necessary to provide fair compensation for protracted representation." Since a determination of each of these issues involves the discretion of the Court, it may be helpful, before proceeding to a consideration of each Voucher, to set out the general considerations which influenced the Court's thinking with regard to each of the items for which compensation or reimbursement is sought, and, finally, with regard to what constitutes "fair compensation" in this particular case.

A. *Time Spent in Open Court*: While each attorney's computation of time spent in Court differs from the other attorneys' and the Clerk's records, the Court finds that in the majority of cases this difference can be explained. There were Ex Parte hearings, in chamber hearings, in camera hearings, bond reduction hearings, bond forfeiture hearings, etc., which affected some defendants and not others. Where the claim for compensation for time spent in Court is based upon the attorney's time records, the Court finds that they are in good faith and should be used as a basis for the award of compensation claimed.

The only serious question with regard to this category of claim is whether the maximum hourly rate of $15.00 should be allowed.[16] While the case was hard fought on the part of defense counsel, it was often over-fought.[17] There was very little effort on the part of defense counsel to conserve time, and no significant agreement was ever obtained from or among counsel on *anything*.[18] The Court must recognize, however, that this is an often used tactic. It cannot be said that the failure to conserve time and energy was not in good faith, in an effort to protect the defendants represented. Clearly some of the delay and

15. See United States v. Ursini, 296 F.Supp. 1155, D.Conn., December 30, 1968; United States v. Aadal, 282 F.Supp. 664 (S.D.N.Y.1968), supplementing, 280 F.Supp. 866 (D.C.1967); United States v. Dodge, 260 F.Supp. 929 (S.D.N.Y.1966); United States v. Hanrahan, 260 F.Supp. 728 (D.D.C.1966); United States v. Pope, 251 F.Supp. 234 (D.Neb.1966); cf. People ex rel. Conn. v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337 (1966). Compare United States v. Thomas, 261 F.Supp. 431 (D.C.1966); United States v. Stith, 261 F.Supp. 401 (D.D.C.1966); United States v. Lowery, 261 F.Supp. 396 (D.D.C.1966); United States v. Moore, 258 F.Supp. 790 (D.D.C.1966); United States v. Owens, 256 F.Supp. 861 (W.D.Pa.1966); United States v. Rountree, 254 F.Supp. 1009 (S.D.N.Y.1966).

16. Only one attorney claims compensation for time spent in open Court at a rate exceeding $15.00 per hour. This claim will be discussed in Part XV, *infra*. All others claim payment at the rate of $15.00 per hour for in-Court time.

17. At one point during the pretrial proceedings, in order to possibly hasten the completion of the motion hearings and for the benefit of counsel during trial, the Court read to counsel Part III of Judge Kaufman's opinion in United States v. Agueci, 310 F.2d 817, 840–841, 99 A.L.R.2d 478 (2d Cir. 1962). See Transcript, pp. 1541–1544. A rereading of this comment affirms this Court's opinion that it is directly applicable to this case.

18. While the Court did get counsel to agree, for purposes of the record, which was the North wall of the Courtroom in Del Rio, the effort involved was not worth the time saved, if any.

refusal of counsel to agree and cooperate among themselves was tactical,[19] and, while the trial took longer than it had to, it could have been longer than it was. In light of this, and further in light of the great strain everyone concerned was under while in Court,[20] the Court will allow the rate of $15.00 per hour for time spent in open Court, and certifies that, except as otherwise adjusted, such represents fair compensation.

B. *Time Spent in Preparation (Out of Court)*: The C.J.A. provides for compensation for time "reasonably expended out of court."[21] Again, the Court generally relies on the good faith of the attorneys in claiming for preparation-time spent out of Court. Most of the items disallowed are disapproved because of an inadequate "written statement specifying the time expended, [and] services rendered."[22] Other adjustments are made on the basis of what the Court considers "reasonable" and total "fair compensation," as discussed *infra*.

█ Again, on the basis of considerations discussed in Part IIIA, the Court allows the maximum rate of $10.00 per hour[23] for the time approved, subject only to adjustments for claims in excess of what this Court considers "fair compensation."

C. *Expenses of Representation*: This is probably the most important item covered by the C.J.A., since if indigents are to get full and equal representation, their attorneys must be allowed reimbursement for the out-of-pocket expenses reasonably incurred incident to such representation.[24] The key word is, of course, "reasonably." The expenses in this case are naturally higher than in the average C.J.A. case, since none of the attorneys, as it turned out, were "local,"[25] and all had living expenses incident to their stay in El Paso, Texas.

During the early part of the proceedings in El Paso, some of the appointed attorneys requested a living allowance of $16.00 per day, the amount allowed the Court's staff when out of town.[26] The Court indicated that, while $16.00 a day might be an example or approximation of what would be reasonable, under the C.J.A. reimbursement was allowed for actual expenses only. Thus, the Court could not, and did not set a figure for them to go by.

█ Consistent with this prior ruling, all but one attorney has claimed reimbursement for itemized, actual expenses. Some average more than $16.00 a day and some less. Where these expenses are adequately described, reasonable, and

19. *E. g.*, counsel would not agree on one of their number to act as lead counsel, since the jury might infer from this cooperation that there was in fact a conspiracy between their respective clients.

20. The tension that built up during each day of the trial was due not only to the general uncooperative attitudes of the defendants and the nature of the charge, but also to the anxiety of the attorneys at being away from their practice for so long and the financial hardship this was sure to cause. It was this anxiety the C.J.A. was meant to at least partially eliminate.

21. 18 U.S.C. § 3006A(d).

22. *Ibid.;* see United States v. Naples, 266 F.Supp. 608 (D.D.C.1967) ; *cf.*, note 3, *supra*, and accompanying text.

23. Again, only one attorney claims compensation for time spent out of court at a rate in excess of $10.00 per hour. All

others claim payment at the maximum rate.

24. See Memorandum in Support of Claim under 18 U.S.C. § 3006A, Clerk's Docket No. 816, filed December 24, 1968, pp. 2–3, for a discussion of this category of expenses, and what the Court should allow.

25. See notes 8–10, *supra*, and accompanying text.

26. These oral requests were supplemented by one written motion, the latter asking for an allowance of $10/day for hotel room, $8/day for meals, reasonable expense for laundry, and $.12/mile for travel. See Motion of Court-Appointed Counsel for Defendants James and Taylor to Have Court Fix Reasonable Reimbursement for Expenses Incurred, Clerk's Docket No. 534, filed April 4, 1968; and Government's Response thereto, Clerk's Docket No. 544, filed April 4, 1968.

reasonably incurred, they are approved for reimbursement. Where the expenses are generalized, inadequately described, unnecessary, or unreasonable, they are disallowed. Individual items affected are discussed in connection with the claim of the attorney seeking reimbursement therefor.

As to the one attorney who claims reimbursement for expenses on the basis of $16.00 per day, the Court reluctantly approves reimbursement. Convinced that this should not, in the usual case, be permitted, the Court here nevertheless allows such claim in order that justice be done for this attorney, and that he receive "fair compensation" for services rendered in this case.

■ D. *Fair Compensation*: After a consideration of the individual claims, and the items listed therein, the Court will make a determination as to each of whether the total claim as approved and adjusted for those items disallowed represents "fair compensation" for protracted representation. In making this determination, and thus attempting to fix a fair and reasonable fee within the statutory limits, the Court considers such recognized criteria as: the amount, character and complexity of work required; responsibilities involved; manner in which duties were performed; knowledge, skill and judgment required of and used by counsel; professional standing of counsel as reflected by length of time at the bar, experience acquired and reputation established; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; results achieved; and any other circumstances brought to the Court's attention relevant and material to a determination of a fair and reasonable fee.[27] While each attorney is treated separately, the case is also viewed as a whole. From a consideration

of all these factors, from all angles, the Court, in each case, makes a determination of what is "necessary to provide fair compensation for protracted representation."

## IV.

The most difficult problem in this case is also the most novel.[28] The issue can be simply put thus: When an attorney is and will be participating in a case as retained counsel for one defendant, and is later appointed under the C.J.A. to represent an additional indigent defendant, what portion of the time expended and expenses incurred may be compensated for and/or reimbursed under the C.J.A.? This question is painfully relevant to three of the attorneys here involved, and will be further discussed as their individual claims are taken up.

Briefly, there are three possible methods of treatment of this problem, each of which can be outlined as follows:

(1) Allow compensation and reimbursement under the C.J.A. *only* for time and expenses peculiar to the indigent defendant. The argument here is that the attorney would have to be in Court anyway, and would have had to prepare on the general questions presented, and, under the philosophy of the C.J.A., should be compensated only for the added burden peculiar to the indigent defendant. The problem with this method is that we would be requiring the solvent defendant to pay all general expenses simply because his co-client is indigent. Where he will not bear this burden, we would require the attorney to absorb a loss for half of the general expenses simply because one of his clients is indigent, whereas, if both were either solvent or both indigent, this loss would not result. While our law cannot discriminate against the indigent defendant,

27. See Connecticut Plan Under the Criminal Justice Act (adopted by the District Court on February 15, 1965, approved by the Circuit Council on May 12, 1965) as quoted in United States v. Ursini, 296 F. Supp. 1155, D.Conn., December 30, 1968.

28. The Court can find nothing in the C. J.A. bearing on the issue discussed hereafter, nor any case dealing therewith.

neither should it discriminate against the solvent client or his attorney, where the attorney finds himself representing clients of both classes.

(2) Allow compensation and reimbursement under the C.J.A. for the indigent's pro-rata share of time spent in Court, general preparation, and general expenses, plus compensation and reimbursement for time and expenses peculiar to the indigent. This seems the best "compromise" position, is the way most attorneys would charge two paying clients, and is the method to be used in most cases.

(3) Allow compensation and reimbursement under the C.J.A. for *all* time in Court, time in general preparation, and general expenses, plus time and expenses peculiar to the indigent, *less* what the paying client actually did pay the attorney for his share of the burden. This method would do away with the problems of loss to the attorney and/or the paying client, and would further insure that the indigent as well as the paying client, would get the fullest possible representation. It is consistent with the C.J.A. to the extent that the Act was to take the "sting" out of representing the indigent, since this method would result in soothing the "sting" regardless of its source. The only problem is the possibility that the paying client might pay less, knowing that the government will at least partially pay his attorney for his representation.

██ The Court can envision situations where each of the above methods might be appropriate. What is "fair compensation" in any one case must depend on the facts of that case, the situation of the attorney and defendants involved, and the circumstances surrounding both the appointment and the retention of counsel. In the case *sub judice* the Court finds that the appropriate method of computing compensation and reimbursement, under the pe-

culiar circumstances of this case, is the latter of those described above.

The specific situation of each of the three attorneys involved in this problem, as well as that of their clients, and the circumstances surrounding both the appointment and "hiring," will be discussed in detail as that attorney's claim is considered. In general, as to all three, it can be said that most, if not all of the "paying" clients were indigent at the time the attorney agreed to represent him and throughout the trial. The attorney accepted representation for reasons other than making a fee, and further accepted "employment" ignorant of the complexity and length of the ensuing proceedings. Had the true nature of the case been known or anticipated, all defendants represented by these attorneys would probably have had to have separate Court-appointed counsel, and the total expense to the government would have been much greater than the total as approved in this Memorandum. The client-defendant in each instance who "retained" the attorney paid him whatever he could, and there is no indication that they can pay any more. In each case, what was paid was significantly below what a solvent defendant might be expected to pay a retained attorney for representing him in a similar case.[29] That justice prevail and counsel involved receive "fair compensation" under the C.J. A., the claims will be approved substantially as urged, less money actually received from defendants not covered by the C.J.A.

## V.

FRED A. SEMAAN, from San Antonio, Texas, represented Clifford Henry Bowen by Court-appointment from March 19, 1968, until released by order of the United States Court of Appeals for the Fifth Circuit on January 7, 1969.[30] He also represented, by employment, James Timothy Overton, Darrell

---

29. At the hearing, it was agreed by all that an attorney with knowledge of the nature and length of this case would not take it for less than $25,000.

30. A copy of this order is attached to this Memorandum.

Wayne Overton, Sue Overton, and Mildred Ross from their first appearance in the case.

■ During the preliminary remarks of Counsel at the November 22, 1968, hearing, when other counsel indicated their wish to testify in support of their Vouchers, Mr. Semaan indicated a desire to waive whatever claim he had regarding the representation of Mr. Bowen during the trial of this case in El Paso, Texas. The Court indicated he would accept such a waiver if in writing and provided that such would not in any way affect his further representation of Mr. Bowen until released by the United States Court of Appeals for the Fifth Circuit. Mr. Semaan submitted such a waiver and the Court approved same by written order the same day. A copy of both instruments is attached to this order. The approval of Mr. Semaan's waiver of claim for compensation and expenses is hereby reaffirmed, and, therefore, no payment is herein approved with regard to the Voucher submitted by Mr. Semaan. , The Voucher, without the approval of the Court, will be forwarded, along with the supporting documents, for reference.

### VI.

ARTURO C. GONZALEZ, of Del Rio, Texas, represented Harben Leonard Stanley by appointment of the Court from January 23, 1968, until this defendant was severed by written order filed March 29, 1968. In his Voucher for Compensation and Expenses of Appointed Counsel, CJA Form 4, Mr. Gonzalez claims compensation for 80.25 hours of time spent in Court, at $15.00 per hour, for a total of $1,203.75. The attached Schedule of Time Spent in Court justifies payment of at least that amount. Mr. Gonzalez claims compensation for 14 hours of time spent in preparation, out of court, at $10.00 per hour, for a total of $140.00. This claim is

described and is more than reasonable. The final claim is for $33.35 for reimbursement of expenses of representation. Most of this claim is supported by written receipts, and Mr. Gonzalez testified at the hearing that he was not claiming reimbursement for approximately $53.00 additional expense. All expenses listed are adequately described and appear necessary and reasonable.

■ The Voucher is hereby approved for payment in the sum of $1,377.10. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

### VII.

■ JOHN R. FOSTER, of Del Rio, Texas, represented Elizabeth Agnes Sherman by Court-appointment from December 28, 1967, until he was released by the Court, with consent of the defendant and of V. F. Knickerbocker, who represented her thereafter, by written order filed March 19, 1968. Mr. Foster claims compensation for 90.8 hours of time spent in Court, at $15.00 per hour, for a total of $1,362.00. At the hearing, Mr. Foster offered copies of his time records concerning this case, which were accepted as Court's Exhibit No. 15 and are attached to his voucher. These substantiate his claim. Mr. Foster further claims compensation for 105.6 hours of time spent in preparation, out of court, at $10.00 per hour, for a total of $1,056.00. This claim is itemized and described in the above time records as well as in the Worksheet attached to the voucher. Finally, Mr. Foster claims $161.59 as expenses of representation. This claim is broken down in the Worksheet, and substantiated by Court's Exhibits 16 and 17. The fee paid to the Oklahoma attorney for investigative work appears reasonably necessary,[31] as do the other expenses claimed.

---

31. This claim could, and probably should have been submitted and approved through CJA Form 9, accompanied by either CJA Form 8 or CJA Form 10, and by CJA

Form 3a, Sheets 1 and 2. However, since Mr. Foster has already paid the bill, and further since the Court would have authorized and approved the expense and

Thus, the total claim represented by Mr. Foster's Voucher is $2,579.59. In light of the factors set in Part III D, *supra,* however, the Court finds that only the sum of $2,000.00 is "necessary to provide fair compensation for protracted representation" in this particular case, as that standard must be interpreted under the philosophy of the C.J.A. .

The Voucher is therefore approved for payment in the sum of $2,000.00. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

### VIII.

■ JOHN W. CLAYBROOK, of Eagle Pass, Texas, represented Travis Roy Erwin by Court-appointment from December 28, 1967, until he was released by the Court, with consent of the defendant and James R. Gillespie, who represented him hereafter, by written order filed March 19, 1968. Mr. Claybrook claims compensation for 84.6 hours of time spent in Court, at $15.00 per hour, for a total of $1,269.00. The attached schedule adequately itemizes and describes this claim. Mr. Claybrook claims compensation for 99.5 hours of time spent in preparation, including 34 hours of travel time during normal office hours from Eagle Pass to Del Rio, at $10.00 per hour, for a total of $995.00. While not described in any more detail than CJA Form 4 provides in itself, this time appears reasonably expended. Mr. Claybrook finally claims reimbursement for "Car expenses" of $121.00, representing $.10 per mile for 1,210 miles, or 11 round trips from Eagle Pass to Del

Rio. This claim is more than reasonable in light of the many expenses Mr. Claybrook testified he incurred for which he seeks no reimbursement,[32] and in light of the fact that he and Mr. Rhodes traveled together, each claiming only half of the total travel expenses.

The Voucher is hereby approved for payment in the sum of $2,385.00. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

### IX.

■ JEREMIAH INGELS RHODES, of Eagle Pass, Texas, represented Clifford Henry Bowen by Court-appointment from December 28, 1967, until he was released by the Court, with consent of the defendant and Fred A. Semaan, who represented him thereafter, by written order filed March 19, 1968. Mr. Rhodes claims compensation[33] for 85.15 hours of time spent in Court, at $15.00 per hour, for a total of $1,277.25. The attached schedule adequately itemizes and describes this claim. Mr. Rhodes claims compensation for 54.45 hours of time spent in preparation including 20.25 hours of travel time during normal office hours from Eagle Pass to Del Rio,[34] at $10.00 per hour, for a total of $544.50. Again, while the description is minimal, the amount is reasonable. The final claim is for $187.52 for reimbursement of expenses of representation, including $132.00 for 12 round trips from Eagle Pass to Del Rio, or a total of 1,320 miles at $.10 a mile.[35] Again, in light of the expenses incurred for which Mr. Rhodes does not seek reimburse-

amount paid and here approves the claim as reasonable and necessarily incurred, reimbursement through CJA Form 4 should be allowed.

32. See Memorandum in Support of Claim by John W. Claybrook, . . . For Compensation and Expenses as Court-Appointed Counsel, Clerk's Docket No. 827, filed January 10, 1969.

33. The Court is here passing on the First Amended Voucher for Compensation and Expenses of Appointed Counsel, submit-

ted by Mr. Rhodes at the hearing. A copy of his original Voucher is attached thereto for reference.

34. Mr. Rhodes evidently has shorter office hours than Mr. Claybrook. See part VIII, *supra.*

35. The mathematical error made in the body of the Voucher with respect to this item is not reflected in the total. It is the total which the Court approves, not the arithmetic.

ment, and the arrangement with Mr. Claybrook, which saved the government money, these expenses are reasonable.

The Voucher is hereby approved for payment in the sum of $2,009.27. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

## X.

█ TAYLOR NICHOLS, of Uvalde, Texas, represented Mary Farmer (Schutz) by Court-appointment from January 24, 1968, until he was released by the Court, with consent of the defendant and Max P. Flusche, who represented her thereafter, by written order filed March 19, 1968. Mr. Nichols claims compensation for 100.5 hours of time spent in Court, at $15.00 per hour, for a total of $1,507.50. While this seems high, and is in fact higher than that claimed by other attorneys and shown by the Clerk's records, the Court cannot say that the difference cannot be explained. Exhibit A, attached to the voucher, itemizes the hours claimed. Mr. Nichols next claims compensation for 133.5 hours of time spent in preparation, including 66 hours of travel time during normal office hours from Uvalde to Del Rio, at $10.00 per hour, for a total of $1,335.00. In light of the large number of hours claimed as in-court service, and the relatively large amount of time spent in other types of preparation, the Court cannot approve the amount of time claimed as spent in travel during office hours.[36] Since the supporting documents do not allow the Court to determine what travel time was actually expended during normal office hours, the claim of 66 hours is disapproved. Finally, Mr. Nichols claims reimbursement for $458.63 of expenses, including $308.00 for 22 round trips from Uvalde to Del Rio, or a total of 3,080 miles at $.10 a mile.[36a] Also included is $37.10 for meals, presumably lunch, in Del Rio. The Court cannot say that these expenses were not reasonably incurred.

Adjusted in light of the specific items disallowed, the total claim represented by Mr. Nichols' Voucher is $2,641.13. Further, in light of the factors set out in Part III D, *supra*, however, the Court finds that only the sum of $2,308.00 [37] is "necessary to provide fair compensation for protracted representation" in this particular case, as that standard must be interpreted under the philosophy of the C.J.A.

Thus, the Voucher is hereby approved for payment in the sum of $2,308.00. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

## XI.

█ GEORGE M. THURMOND, of Del Rio, Texas, represented Joan Dobbs Taylor[38] by Court-appointment from January 31, 1968, until released by the Court, with consent of the defendant, when her case was severed, by written order filed April 8, 1968. Mr. Thurmond also represented Jerry Ray James by Court-appointed from January 31, 1968,

36. As an example of the discrepancy, see the figures listed for February 19, 1968, on the CJA Worksheet, attached to the Voucher. According to the Worksheet, Mr. Nichols spent 5 hours in Court, 2.5 hours interviewing his client, 1.5 hours in legal research, 2.5 hours in preparing motions, and 3 hours in travel. While the Court cannot determine exactly when the travel time was spent, it is unreasonable to suppose that all 3 hours occurred during normal office hours.

36a. This claim is itemized and described in Exhibit B. Exhibit C, also attached to the Voucher, covers the same items, but reaches a different total. Exhibit B was used as a basis for the Voucher. Exhibit C is thus disregarded.

37. This figure represents the ceiling of $2,000.00, imposed upon Mr. Foster, *supra*, plus $308.00 in expenses incident to travel, an expense Mr. Foster did not have.

38. Indicted as "Joan Dobbs Taylor," this defendant testified at the trial that her true name was Betty Joyce Dabbs. She is referred to herein under the name appearing in the indictment and the Order Appointing Counsel, CJA Form 2.

until date. Mr. Thurmond has filed three Vouchers in this case, admitted in evidence at the hearing thereon as Court's Exhibits 1–3, as follows:

Court's Ex. 1—submitted April 17, 1968, for compensation and expenses in connection with the representation of Joan Dobbs Taylor from January 31 through April 8, 1968.

Court's Ex. 2—submitted April 18, 1968, for compensation and expenses in connection with the representation of Jerry Ray James from January 31 through April 12, 1968.

Court's Ex. 3—submitted June 28, 1968, for compensation and expenses in connection with the representation of Jerry Ray James from April 15 through June 26, 1968.

Before proceeding with a consideration of each of these Vouchers individually, the Court wishes to note that Mr. Thurmond carried an inordinate amount of the burden in this case. While the last counsel to enter the case, he was, because of the procedure evolved for motion hearings and trial, the first defense counsel to question each witness. It thus fell upon Mr. Thurmond to examine or cross-examine each witness not only regarding the matters peculiar to his client, but also concerning the many general issues affecting all defendants. His client, at least according to the news media, was the most infamous of the group, and Mr. Thurmond had more problems with publicity prejudicial to his client than the other attorneys. Further, the more complex legal issues raised before and during the trial more often directly concerned his client or clients than those of other attorneys in the case. Mr. Thurmond therefore did most of the more complex legal work, and called more witnesses than any other attorney. Finally, the Court will notice that Mr. Thurmond's client was as demanding of counsel, if not more demanding, as any defendant involved. With regard to the Vouchers, Mr. Thurmond was one of the two attorneys appointed in Del Rio who had to follow the case to El Paso. Mr. Thurmond's client was willing to have other counsel substitute for the trial, but there was no attorney who would take him. Mr. Thurmond was among the most careful in keeping records, and developed the CJA Worksheet which most of the attorneys used in preparing their claims. Given the burden he bore, his claims total substantially less than those of other, less burdened counsel.

With regard to Court's Ex. 1, Mr. Thurmond claims compensation for 44.75 hours of time spent in Court, at $15.00 per hour, for a total of $671.25. This figure represents half of the time spent in Court for matters concerning both of his clients, plus time spent in court for matters peculiar to Joan Dobbs Taylor.[39] The CJA Worksheet attached to the voucher adequately itemizes and describes this claim. Mr. Thurmond claims compensation for 38.5 hours of time spent in preparation out of Court, including half of the time spent in travel from Del Rio to El Paso, during normal office hours. Again, the total figure represents half of the time spent in preparation affecting both clients, plus time spent in preparation peculiar to Joan Dobbs Taylor. The Claim is adequately itemized and described, and the time appears reasonably expended. Finally, Mr. Thurmond claims reimbursement of $75.13 for expenses of representation. Again, these are divided between the two clients where general (e. g., car expense, room, meals, etc.) and allocated to Joan Dobbs Taylor in full when affecting only her. All appear to be reasonable and necessary.

The Voucher marked Court's Ex. 1 is hereby approved for payment in the sum of $1,131.38. It is further hereby certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

With regard to Court's Ex. 2, Mr. Thurmond claims compensation for 67

---

**39.** See *e. g.,* entries in CJA Worksheet for January 31, 1968.

hours of time spent in Court, at $15.00 per hour, for a total of $1,005.00. Again, the time is allocated between Joan Dobbs Taylor, above, and Jerry Ray James where appropriate, and charged to James in toto where peculiar to him. The CJA Worksheet attached adequately itemizes and describes the claim. Next Mr. Thurmond claims compensation for 46.25 hours of time spent in preparation out of Court. The time is properly allocated, itemized and described. Finally, Mr. Thurmond claims reimbursement for $183.06 for expenses of representation. This includes, *inter alia*, room and meals in El Paso for April 3–11, 1968, ranging from $12.00 to $16.00 per day. All expenses appear reasonable and necessary.

The Voucher marked Court's Ex. 2 is hereby approved for payment in the sum of $1,650.56. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

With Court's Ex. 3, we consider the first Voucher dealing solely with representation and expenses during the actual trial of the case in El Paso. Mr. Thurmond claims compensation for 157.25 hours of time spent in open court, at $15.00 per hour, for a total of $2,358.75. The CJA Worksheet attached to the Voucher adequately itemizes and describes the claim. Next Mr. Thurmond claims compensation for 92.25 hours of time spent in preparation out of Court, at $10.00 per hour, for a total of $922.50. With only a small portion of travel time spent during normal office hours, and in light of Mr. Thurmond's part in the trial of the case, this clearly represents time

reasonably expended. Finally, Mr. Thurmond claims reimbursement for $1,-115.78 for expenses of representation. The expenses of long distance calls, xerox work, notary fees, and photographs were clearly reasonably incurred. Travel expense, figured at $.10 per mile, is also reasonable. The total in this category represents travel to Del Rio at the end of the trial, as well as trips to Del Rio and back to El Paso during each of the long recesses and for one additional week-end. This was reasonable. The Court required Mr. Thurmond to follow the trial to El Paso, and this should not include an abandonment of his family and law practice. The final expense item for room and meals and other living expenses in El Paso is also reasonable and necessarily incurred.

The Voucher marked Court's Ex. 3 is hereby approved for payment in the sum of $4,397.03. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.[40]

## XII.

■ JAMES R. GILLESPIE, of San Antonio, Texas, represented Travis Roy Erwin by Court-appointment from March 19, 1968, through June 20, 1968, when this defendant was granted judgment of acquittal by the Court. With this Voucher we first consider a claim of an attorney who represented two defendants, but only one by appointment under the C.J.A.[41]

Briefly stated, the situation of Mr. Gillespie during the proceedings in this case, and that of his various "clients," is as follows:[42] Mr. Gillespie, who op-

---

40. The total of all three Vouchers approved herein is $7,178.97. This would seem a minimum of "fair compensation" for six months work on a case which would have resulted in at least a $25,000.00 fee for a lawyer privately employed. When viewed as half of Mr. Thurmond's *gross* income for 1968, the amount here approved seems a small price for the government to pay for his services in this

case, and clearly does not overreach the "fair compensation" allowed by the C.J.A.

41. See Part IV, *supra*.

42. For a detailed summary of Mr. Gillespie's background and his view of his participation in this case, see Attorney's Memorandum, Clerk's Docket No. 818, filed December 30, 1968, and Supplemental Memorandum, Clerk's Docket No. 830, filed February 17, 1969.

erated a "one-man-office" in San Antonio, and specialized in criminal matters, entered the case as counsel for Walter Bernard Korn. During the pretrial proceedings, Mr. Gillespie continued to represent Korn, as well as participate as associate counsel with Fred A. Semaan in the representation of James Timothy Overton, Darrell Wayne Overton, Sue Overton, and Mildred Ross.[43] Pursuant to a motion filed by Mr. Gillespie on February 22, and heard February 26, 1968, the case was dismissed as to Korn, in open court, February 26, and confirmed by written order filed March 18, 1963. After his client was dismissed on February 26, Mr. Gillespie remained in the case as associate counsel with Mr. Semaan.

Immediately after the Court transferred the case to El Paso, March 18, 1968, Travis Roy Erwin, with and through his attorney, Mr. Claybrook, moved the Court to allow Mr. Gillespie to substitute as new counsel for the trial in El Paso, setting out the hardship such representation would visit upon Mr. Claybrook, and further, that Mr. Gillespie "has been in attendance throughout all proceedings thus far had in this cause and can take over the defense of this defendant without any delay in the trial hereof or any proceeding relative thereto." [44] At the bottom of said motion was the following:

"I, James R. Gillespie, agree to accept appointment as counsel for the defendant Travis Roy Erwin if permitted by the court to do so.

/S/ James R. Gillespie

James R. Gillespie"

This latter agreement was made without prior solicitation to Mr. Gillespie from the Court, and was prompted, presumably, by Mr. Gillespie's wish to aid a brother lawyer, and the fact that Mr. Gillespie would follow the trial to El Paso as an associate of Mr. Semaan in any event. Regardless, the motion was granted, and an Order Appointing Counsel CJA Form 2,[45] was entered March 19, 1968.

Thereafter the case proceeded to trial with Mr. Gillespie representing Erwin by Court-appointment. During the last half of April, 1968, Brantley Pringle, who had represented the defendant Curtis Glenn Garrett by employment up until that point, informed the Court that he had had a death in his family, and requested to be allowed to withdraw from further participation in the case. The Court was further informed, and confirmed, that Mr. Gillespie had agreed to represent this defendant, and that the defendant consented to the new arrangements. The Court allowed the substitution.[46] Thereafter, Mr. Gillespie represented Erwin by appointment, and Garrett by agreement with the defendant and Pringle.[47] Erwin was acquitted by the Court at the end of the Government's case in chief; Garrett was acquitted by the jury.[48]

43. See e. g., various motions filed January 16, 1968.

44. Motion to Substitute Counsel, Clerk's Docket No. 509, filed March 18, 1968.

45. While, in each instance where new appointed counsel was substituted for old, the Court could have used CJA Form 3, accompanied by CJA Form 3a, Sheets 1 and 2, the substitution was accomplished by the execution of a CJA Form 2 as to each defendant involved. This should be enough.

46. See notes 9–10, supra. This substitution was confirmed by written Motion and Order, Clerk's Docket Nos. 577 and 581, filed May 2, 1968.

47. Mr. Gillespie, from all appearances, also continued to act as associate to Mr. Semaan in the representation of the latter's clients.

48. In his Supplemental Memorandum, Mr. Gillespie states: " * * * even though success is not a governing factor, Counsel does not believe that it should be excluded from the Court's determination as at least it is an indicia of proper preparation and presentation to the Court under all the facts and law governing the case." p. 8.

In justice, the third alternative method, outlined in Part IV, *supra*, should apply to this claim, as adjusted below. Mr. Gillespie was appointed to represent Erwin, with consent of the defendant and attorney, under circumstances which saved one attorney from severe hardship and saved all concerned a possible lengthy delay in the proceedings. He accepted the representation of Garrett, again by agreement of all concerned, under similar circumstances. The "employment" was not taken to gain a fee, but presumably to aid a brother attorney and to avoid any delay as to the other defendants. Garrett was virtually indigent, and paid Mr. Gillespie a total of $325.00 for his efforts in the case. There is nothing to indicate that Garrett could or can pay any more. The knowledge and perspective gained by Mr. Gillespie in representing the respective defendants inured to the benefit of all. There appears no reason to limit Mr. Gillespie's claim with regard to his representation of Erwin simply because he represented another defendant also. To so limit the claim would perpetuate the very injustice the C.J.A. was meant to eliminate.

Mr. Gillespie claims compensation for 189.5 hours of time spent in open court, at $15.00 per hour, for a total of $2,-842.50. While this computation of time is higher that that shown by the Clerk's record, and that claimed by the other attorneys for a corresponding period, the Court cannot say that the difference cannot be explained. Schedule A, attached to the Voucher, itemizes and describes the time claimed. Next, Mr. Gillespie claims compensation for 293.5 hours of time spent in preparation out of court, at $10.00 per hour, for a total of $2,-935.00. This claim is itemized and described in Schedule B attached to the Voucher. Included in this claim is time spent in investigation, conferences with defendant, conferences with co-counsel, briefing, preparation of mo-

tions, etc. The descriptions are minimal, and in the case of "Consultation with other counsel," inadequate to show that the time was in fact reasonably expended. In light of the nature of the case, the amount and complexity of the work performed by this and other counsel, the Court cannot find that time spent in preparation out of court above 100 hours was in fact reasonably expended. The claim for 293.5 hours, listed as Item III on the Voucher, is disapproved. The Court approves only 100 hours of time spent in preparation out of court, at $10 per hour, for a total approved claim under Item III of $1,000.00. Finally, Mr. Gillespie claims reimbursement of $2,081.60 for expenses of representation. This claim includes three main items. The first claim is for travel expense, at $.10 a mile, for trips from San Antonio to El Paso, or vice versa, totaling 4,616 miles for a total expense of $461.60. This claim is approved. Second, Mr. Gillespie claims living expenses for the 60 days he was in El Paso attending the trial, at $16.00 per day or "per diem." While the Court had indicated that the attorneys could not expect a per diem allowance, in *light of Mr. Gillespie's* testimony that his actual expenses were always over $16.00 per day, the Court will approve this claim as the minimum expenses of Mr. Gillespie. As indicated in Part III C, *supra*, the Court does so with reluctance, and will not accept this kind of claim as a matter of practice. It is accepted here in the interest of justice, under the peculiar circumstances of this case, in order that Mr. Gillespie receive "fair compensation" as contemplated under the C.J.A. Except for the days of May 3 and May 30, 1968, which are listed on Schedule C as days in travel from El Paso to San Antonio, and thus outside the purview of Schedule D, the claim is therefore approved. This leaves 58 days at $16.00 a day, for a total of $928.00. The third claim under Item IV is for 66

---

The Court basically agrees with this statement, and thus included "results achieved" as one of the factors to be considered in determining what is "fair compensation" in each case. See note 27, *supra*, and accompanying text.

hours spent in travel at $10.00 per hour, for a total of $660.00. It is clear from Schedule C, however, as attached to the Voucher, that not all of this time claimed was spent during normal business hours. Since the supporting documents do not allow the Court to determine what travel time was actually expended during normal office hours, the total claim of 66 hours is disapproved. The Court, therefore, approves only $1,389.60 as reimbursable expenses under Item IV of the Voucher as submitted.

Thus, the total approved claims for compensation and reimbursement amount to $5,232.10. Consistent with the method the Court has deemed applicable to Mr. Gillespie's Voucher, there is subtracted from this amount $325.00 paid to Gillespie by Garrett for his services in this case. This leaves a total approved claim of $4,907.10.

The Voucher is hereby approved for payment in the sum of $4,907.10. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

## XIII.

MAX P. FLUSCHE, of Austin, Texas, represented Mary Farmer (Schutz) by Court-appointment from March 19, 1968, through June 25, 1968, when this defendant was acquitted by the jury. Again, we deal with an attorney who represented other defendants, besides the one under the C.J.A.

Briefly stated, the situation of Mr. Flusche during the proceedings in this case, and that of his various "clients," is as follows:[49] Mr. Flusche, who operated a "one-man-office" in Austin, Texas, entered the case on December 28, 1967, as counsel for Chester Arthur Schutz. He did so at the request of the defendant's aunt, who had previously hired him to represent Schutz in connection with a narcotics charge pending in State court in Austin. At this point no one, save possibly the government, had any idea that the proceedings would be as long and intensive as they eventually proved to be. On February 7, 1968, the defendant Judith Ann Cathy moved the Court to allow her to substitute Mr. Flusche as her attorney of record, instead of Mr. Charles R. Burton.[50] After a hearing in San Antonio, Texas, and after obtaining the consent of all concerned and an assurance that the substitution would cause no delay in the proceedings in the case, the motion was granted by the Court by written order filed that same day. There was still no indication that the trial was to be as long as it was, and Flusche may have taken Cathy, both she and Flusche being from Austin, thinking that he would have to attend the proceedings in any event, and that her case would add little to his burden. In any event, Mr. Flusche continued to represent both Schutz and Cathy throughout the proceedings in this case.

Immediately after the Court transferred the case to El Paso, March 18, 1968, Mary Farmer (Schutz), with and through her attorney, Mr. Nichols, moved the Court to allow Mr. Flusche to substitute as new counsel for the trial in El Paso, setting out the hardship such representation would visit upon Mr. Nichols, that Mr. Flusche represented the defendant's husband, C. A. Schutz, that he was familiar with the proceedings in the case as well as the facts incident to her in particular, and that the substitution would not cause delay or

49. For a detailed summary of Mr. Flusche's background and participation in the case, see Memorandum of Attorney, Clerk's Docket No. 819, filed December 30, 1968.

50. Mr. Burton, also of Austin, had previously moved the Court to be allowed to withdraw as counsel because of inconveni-ence and inadequate fee arrangements. Clerk's Docket No. 96, filed January 24, 1968. After a hearing, this motion was denied by the Court, holding these grounds insufficient to justify being relieved from service. Clerk's Docket No. 99, filed January 25, 1968.

prejudice as to any defendant.[51] The Motion was joined by Mr. Flusche, presumably to aid a brother lawyer and insure that his prior client's wife would be fully and adequately represented, and possibly controlled. In any event, the motion was granted, and an Order Appointing Counsel, CJA Form 2, was entered March 19, 1968.

The case proceeded to trial, with Mr. Flusche representing Schutz and Cathy by agreement, and Mary Farmer (Schutz) by appointment. Cathy was acquitted by the Court at the end of the Government's case in chief; Farmer was acquitted by the jury; and C. A. Schutz was convicted.

Again, in justice, the third alternative method, outlined in Part IV, supra, should apply to this claim, as adjusted below. Mr. Flusche made his appearance in the case without full knowledge of its nature and because he was representing the defendant Schutz in another matter. Schutz himself was indigent,[52] and the only money Flusche received for his service to him was paid by relatives of the defendant. He accepted the representation of Cathy, again without knowledge of the probable length of the trial, to help Mr. Burton, and on the theory that her case would not amount to much additional work. In both cases, acceptance of these "clients" was for reasons other than the prospect of a large fee. Cathy paid Mr. Flusche $527.80, net, for his services to her. There is nothing to indicate that she could or can pay any more. The relatives of Schutz paid Mr. Flusche a total of $1,639.22, for which Flusche represented him in a State trial, prepared the appeal of that conviction, prepared and filed an application for a writ of certiorari in the Supreme Court of the United States in connection with a Federal conviction in Kansas,[53] and represented him in the instant case. There is nothing to indicate that he will receive any more from any source with regard to this representation. The knowledge and perspective gained by Mr. Flusche in the pretrial proceedings inured to the benefit of Miss (Mrs.) Farmer (Schutz). There appears no reason to limit Mr. Flusche's claim with regard to his representation of Farmer solely because he represented other defendants also.

Mr. Flusche claims compensation for 213 hours of time spent in open court, at $15.00 per hour, for a total of $3,195.00.[54] While this computation of time is higher than that shown by the Clerk's record, and that claimed by other attorneys for a corresponding period, again, the Court cannot say that the difference cannot be explained. The CJA Worksheet attached to the Voucher adequately itemizes and describes the time claimed. The Court approves this time, less only the 5 hours shown for March 19, 1968. This was the day Mr. Flusche was appointed, while defendant was still represented by Mr. Nichols, and his actual representation did not begin until after that date. The Court therefore approves compensation for 208 hours of time spent in open Court, at $15.00 per hour, for a total approved claim under Item II of $3,120.00. Next, Mr. Flusche claims compensation for 139.5 hours of time spent in preparation out of Court, at $10.00 per hour, for a total of $1,395.00. Included in this claim, as shown by the CJA Worksheet attached thereto, is a total of 91 hours of time

51. Motion of Defendant, Mary Farmer Schutz, for Substitution of Appointed Counsel, Clerk's Docket No. 513, filed March 19, 1968.

52. Schutz was allowed to proceed in forma pauperis in this case. See Affidavit, Clerk's Docket No. 228, filed February 19, 1968.

53. See Schutz v. United States, 395 F.2d 225 (10th Cir. 1968). This Application is still pending in the Supreme Court, as 804 Miscellaneous.

54. The Court is here passing on the Amended Voucher for Compensation and Expenses of Appointed Counsel, submitted by Mr. Flusche as part of his Memorandum and dated December 26, 1968. The original Voucher is attached thereto for reference.

described as "Stand-by, consultation, review, etc." In his Memorandum, Mr. Flusche explains this as follows:

"Compensation for time spent away from home and office is sought only to provide payment for eight hours per day during normal office hours. In other words, if the applicant spent six hours in court on a given day, he claims compensation for an additional two hours spent out of court. Where he held (sic) in El Paso awaiting some further action by the Court he claims compensation for eight hours per day during normal work days at the rate allowed for time spent out of court. It is respectfully submitted that such a claim for compensation is reasonable and proper under the circumstances. Additionally, much of the time so claimed was actually spent in legal research, conference with co-counsel, planning and review." [55]

While this might be the usual practice when charging a paying client,[56] it is not allowed under the C.J.A., where the philosophy is not to provide compensation such as would be charged non-indigent clients under private retainers, but to "take the 'sting' out of the practice formerly obtaining of requiring members of the Bar to represent indigent defendants without pay and without reimbursement for necessary expenses." [57] In light of the relatively large number of hours claimed for in-court service, the nature of the case, the amount and complexity of the work performed by this and other counsel, the inadequate description of the 91 hours here involved, and the philosophy of the C.J.A., the Court cannot find that the 91 hours claimed as "standby, consultation, and review" were in fact reasonably expended. Un-

der Item III on the Voucher, the Court approves only 48.5 hours of time spent in preparation out of court, at $10.00 per hour, for a total approved claim under Item III of $485.00. Finally, Mr. Flusche 'claims reimbursement of $1,063.57 for expenses of representation.[58] This claim consists primarily of travel and living expenses, as reflected in the CJA Worksheet. Mr. Flusche testified that he did not charge here for telephone calls, and other out-of-pocket expenses because of his failure to keep adequate records to reflect what portion of each such expenses was incident to representation of his client and what was personal. Travel expenses claimed appear reasonably incurred and are approved, except, again, those incurred immediately after Mr. Flusche's appointment in the case. Allowing this would be to allow both her old and new attorneys to charge for this period. Thus, the $23.50 travel expense shown as incurred March 19, 1968, is disallowed. The amended claim of $579.12 for room and meals during the El Paso trial appears reasonably incurred, and is approved. The Court therefore approves a total claim for expenses of representation, Item IV of CJA Form 4, of $1,040.07.

Thus, the total approved claims for compensation and reimbursement amount to $4,645.07. Consistent with the method the Court has deemed applicable to Mr. Flusche's Voucher, we must now subtract the amount he received for services to his other two clients for a corresponding period. Of the $1,639.22 received from the relatives of Schutz, the Court allocates $700.00 as applicable to the other work Mr. Flusche did for this client,[59] and $939.22 as applicable to the services rendered in this case. Of this

---

55. Memorandum of Attorney, *supra* note 49, at pp. 6–7.

56. See, *e. g.*, Minimum Fee Schedule of the State Bar of Texas, adopted April 26, 1968, p. 58.

57. Government's Response to Claims of Defense Counsel for Compensation and Expenses, Clerk's Docket No. 829, filed January 15, 1969, p. 1.

58. While a different figure is listed at the bottom of the Voucher opposite Item IV, the "Net Amount Claimed" figure reflects that $1,063.57 is in fact the claim.

59. Included in this $700.00 figure is the following: $250.00 for defense of the narcotic case in Austin; $40.00 for preparation therefor; $160.00 for preparation and filing of the appeal; and $250.00 for

latter figure, the Court allocates $670.–87 as applicable to the services rendered during the jury trial in El Paso.[59a] Of the net amount of $527.80 paid Mr. Flusche by Miss Cathy, the Court allocates $377.00 as applicable to services rendered during the same period.[59b] Thus, subtracting the sum of $1,047.87 from the approved claims above, we have a total approved claim of $3,597.20.

The Voucher is hereby approved for payment in the sum of $3,597.20. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

### XIV.

V. F. KNICKERBOCKER, of Midland, Texas, represented Elizabeth Agnes Sherman by Court-appointment from March 19, 1968, through June 20, 1968, when this defendant was granted judgment of acquittal by the Court. In addition, Mr. Knickerbocker represented two other defendants from December, 1967, until verdict.

Briefly stated, the situation of Mr. Knickerbocker during the proceedings in this case, and that of his various "clients," is as follows: Mr. Knickerbocker, who operated a "one-man-office" with one associate counsel in Midland, entered the case as counsel for Fred Clinton Hedges and Benjamin Thomas Tisdale, on December 28, 1967. As described by Mr. Knickerbocker, he

" * * * represented the Defendant Hedges as retained counsel for the burglary of the Bank at New Mobeetie,

Texas, in Amarillo, Texas, for which Defendant Hedges was serving a three years sentence in Leavenworth, Kansas, at the time this trial commenced.

"Your Movant [Knickerbocker] represented the Defendant Tisdale as retained counsel in Placerville, California, for misdemeanor robbery, for which the Defendant Tisdale was serving time in the Placerville County Jail at the time this trial commenced.

"That when your Movant agreed to represent Hedges and Tisdale, he knew they were indigent, but felt a moral and legal obligation to endeavor to assist them. In this connection, your Movant would show the Court that this trial includes some of the same matters as when your Movant previously represented the Defendants.

"That your Movant did not anticipate a hearing or trial of more than two weeks duration. * * * " [60]

After the case had proceeded through four continuous weeks of pretrial proceedings, and it began to become evident that the case was going to last far longer than anyone anticipated, Mr. Knickerbocker set out the above and moved the Court to appoint him to represent his clients under the C.J.A., pursuant to 18 U. S.C. § 3006A(c), which provides in part:

"If at any stage of the proceedings, including an appeal, the court having jurisdiction of the case finds that the defendant is financially unable to pay counsel whom he had retained, the Court may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d), as the interests of justice may dictate."

preparation and filing of application for writ of certiorari in the federal case. See Minimum Fee Schedule of the State Bar of Texas, adopted April 26, 1968, pp. 59–60.

59a. In reaching this figure, the Court used the Clerk's computations of hours-spent-in-Court, both in Del Rio and in El Paso, as an indication of the work done in each. See Court's Exhibit Nos. 19 and 20. Based on these figures, the Court used the ratio of 80:200, or 2:5, to represent

the relationship between work performed in Del Rio and El Paso. The figure $670.87 is 5/7 of $939.22.

It is interesting to note that the total sums approved herein for representing defendants in either Del Rio or El Paso mirror this same ratio.

59b. See Note 59a, *supra.*

60. Motion to be Appointed Counsel for Defendants Hedges and Tisdale under Article 3006A, Title 18, Clerk's Docket No. 455, filed March 11, 1968.

This motion was heard and denied in open Court March 12, 1968, and the ruling confirmed by written order filed March 18, 1968. The Court held that, in justice, an attorney should not be allowed to be appointed under this language where he took the case "with open eyes, knowing at the time that his client was indigent," since to do so would be using the C.J.A., solely for the benefit of counsel, and not the indigent defendant, inconsistent with the philosophy thereof.[61]

Immediately after the Court transferred the case to El Paso, March 18, 1968, Elizabeth Agnes Sherman, with and through her attorney, Mr. Foster, moved the Court to allow Mr. Knickerbocker to substitute as new counsel for the trial in El Paso, setting out the hardship such representation would visit upon Mr. Foster, that Mr. Knickerbocker was familiar with the proceedings in the case as well as the facts incident to her in particular,[62] and that the substitution would not cause delay or prejudice as to any defendant.[63] This motion was joined by Knickerbocker, with the specific agreement

" * * * to represent the said Elizabeth Agnes Sherman if I am permitted by the Court to be substituted in place of her present attorney, John R. Foster.

/S/ V. F. Knickerbocker
V. F. Knickerbocker"

Presumably, the reasons underlying this agreement were similar to those of other counsel also taking on additional, appointed defendants at this point. In any event, the motion was granted, and an Order Appointing Counsel, CJA Form 2, was entered March 19, 1968.

The case proceeded to trial, with Mr. Knickerbocker representing Hedges and Tisdale by agreement, and Sherman by appointment. Sherman was acquitted by the Court at the end of the Government's case in chief; Hedges was acquitted by the jury; and Tisdale was convicted.

Again, in justice, the third alternative method, outlined in Part IV, *supra,* should apply to this claim, as adjusted below. Mr. Knickerbocker made his appearance in the case without full knowledge of its nature and for reasons other than expectation of a fee. Both of his "retained" clients were in fact indigent,[64] and Mr. Knickerbocker received only the sum of $426.00 for his services to both. There is nothing to indicate that they could or can pay any more. While the Court remains convinced that its ruling on the Motion to be Appointed as to these defendants was correct, these are nevertheless factors which must be considered in determining what is "fair compensation for protracted representation." The knowledge and perspective gained by Mr. Knickerbocker in the pretrial proceedings in this case, as well as that gained in prior representation of Hedges and Tisdale, inured to the benefit of Miss Sherman. There appears no reason to limit Mr. Knickerbocker's claim with respect to his representation of Sherman simply because he represented other defendants also. Reason and justice are, in fact, to the contrary.

Mr. Knickerbocker claims compensation for 169 hours of time spent in court, at $15.00 per hour, for a total of $2,535.00. Schedule A, attached to the Voucher, adequately itemizes and describes this claim. Mr. Knickerbocker claims compensation for 69.5 hours of time spent in preparation out of court, at $10.00 per hour, for a total of $695.00. Included in this claim is time spent in interviews

---

61. Order Determining Motions, Clerk's Docket No. 510, filed March 18, 1968, Part XX, pp. 12–13. Copies of these pages are attached to this Memorandum.

62. It became clear during the pretrial proceedings in the case that Miss Sherman was, during most, if not all of the period of the alleged offense, a companion of Mr. Tisdale.

63. Motion to Substitute Counsel of Elizabeth Agnes Sherman, Clerk's Docket No. 514, filed March 19, 1968.

64. Both were allowed to proceed in forma pauperis in this case. See Affidavit, Clerk's Docket No. 428, filed March 4, 1968; Affidavit, Clerk's Docket No. 457, filed March 11, 1968; Order, *supra* n. 61, at p. 13.

with client, legal research, interviews with witnesses, "other" as described in Schedule C, and travel during normal office hours. Schedule C itemizes and describes time spent, *inter alia,* in "Stand-by." As set out above,[65] the C.J.A. does not allow compensation for this time. Also listed in Schedule C, is 4 hours spent in "preparation of Jury Argument." Since the case against Elizabeth Agnes Sherman did not go to the jury, this time cannot be allowed. As to time spent in travel during normal office hours, Mr. Knickerbocker lists, in Schedule D, *inter alia,* a 4 hour trip from Del Rio to Midland on March 19, 1968. This was on the same day Mr. Knickerbocker was appointed to represent Miss Sherman, while she was still represented by Mr. Foster, and before Mr. Knickerbocker had made any real appearance in her behalf. This trip is therefore not properly chargeable to services rendered her, and is disallowed, both as to time spent, and as to expenses incident thereto, as claimed in Item IV. With the exception of the items just discussed, the time claimed in Item III is adequately itemized and described and reasonably expended. The Court approves a total of 48.5 hours of time spent in preparation out of Court, claimed under Item III of CJA Form 4, at $10.00 per hour, for a total of $485.00. Finally, Mr. Knickerbocker claims reimbursement for $1,193.-59 of expenses of representation. This claim is adequately itemized and described in Schedules D and E, attached to the Voucher, and appears to be reasonably incurred, except for the travel expenses of $25.60 incured March 19, 1968, as discussed above. It is clearly reasonable in light of the expenses about which Mr. Knickerbocker testified for which no reimbursement is sought. The Court approves reimbursement for expenses, un-

der Item IV of the Voucher, for a total of $1,167.99.

Thus, the total approved claims for compensation and reimbursement amount to $4,187.99. Consistent with the method the Court has deemed applicable to Mr. Knickerbocker's Voucher, there is subtracted from this amount $304.29 of the $426.00 paid to Mr. Knickerbocker for his services in this case.[65a] This leaves a total approved claim of $3,883.70.

The Voucher is hereby approved for payment in the sum of $3,883.70. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

## XV.

HAYGOOD GULLEY, of Del Rio, Texas, represented Dale Norwood Hall by Court-appointment from December 28, 1967, through the pre-trial in Del Rio, the trial in El Paso, until date. Mr. Gulley has filed four Vouchers in this case, three of which were admitted in evidence at the hearing thereon as Court's Exhibits 7–9, and all of which are described in Summary of Vouchers, Clerk's Docket No. 823, filed January 3, 1969.[66] Summarized, they represent the following:

Court's Ex. 7—submitted April 1, 1968, for compensation and expenses in connection with the representation of Hall from December 28 through March 19, 1968.

Court's Ex. 8—submitted July 2, 1968, for compensation and expenses in connection with the representation of Hall from March 20 through June 27, 1968, using the "per diem" method for computing living expenses.

Court's Ex. 9—also dated July 2, 1968, identical to Court's Ex. 8, except itemizing actual living expenses.

Voucher No. 21—submitted December 31, 1968, amending Court's Ex. 9 so as to

---

65. Notes 55–57, *supra,* and accompanying text.

65a. See Note 59a, *supra,* and accompanying text.

66. The fourth Voucher, submitted after the hearing, is not on a CJA Form 4, and, for convenience here, will be referred to as "Voucher No. 21," although not so marked.

claim $30.00 per hour for time spent in Court and $20.00 per hour for time spent in preparation out of Court, and further claiming compensation in connection with the hearing held by the Court on the other Vouchers November 22, 1968, and further claiming interest on the amounts claimed in all other Vouchers at 6% from the date submitted until paid.

While Mr. Gulley's Vouchers do not present the problem of multiple defendants, dealt with above, they do raise new issues unique in terms not only of the other Vouchers in this case but also of the decisional law under the C.J.A. Mr. Gulley was the other attorney from Del Rio, besides Mr. Thurmond, who followed the case to El Paso for trial. Mr. Flusche was willing to substitute, and was familiar with the facts of Mr. Hall's case,[67] but Mr. Hall would not consent to the substitution. Such refusal on his part was not out of affinity for Mr. Gulley, but the contrary. On the other hand, Mr. Gulley had participated vigorously during the pretrial proceedings and convincingly urged several motions of substance in Mr. Hall's behalf. He took an active role in El Paso in the presentation and argument of the many legal issues raised during the trial. He took little part in the case before the jury, except to establish the lack of evidence of his client's guilt, which the Court finds was an effective tactic in light of Mr. Hall's slight participation in the overall offense alleged. Nevertheless, Mr. Hall's discontent with everything in general, and Mr. Gulley in particular, climaxed in his attempting to strike Mr. Gulley in the Courtroom, in front of the jury, and the Court's having to separate the two during the remainder of the trial.[68] In spite of this, Mr. Gulley's argument on Motion for Judgment of Acquittal was among the most effec-

tive, as was his jury argument. In all, Mr. Gulley's services were commendable in light of the adverse circumstances under which he was forced to work.

The novel issues raised by Mr. Gulley are all in Voucher No. 21. In claiming $30.00 per hour for time spent in Court and $20.00 per hour for time in preparation while in El Paso, Mr. Gulley argues that the language in 18 U.S.C. § 3006A(d) allowing "payment in excess of the limits stated herein" applies not only to the "limit" on total compensation and reimbursement of $500.00, but also to the "limits" of $15.00 and $10.00 per hour for in-court and out-of-court time, respectively. He further contends that allowance of the higher hourly rate is necessary for "fair compensation" under circumstances where, as here, an attorney is required to attend trial at a place 422 miles from his office for a period of three months. Even if the Court might agree with the latter proposition, it cannot agree with the contention that it has the discretion to exceed not only the total-figure limits, but also the hourly-rate limits set out in the act. The language relied upon follows the language limiting *total* compensation, and clearly applies to that limit only.[69] Even if the statute allowed such discretion, the Court could not, consistent with the philosophy of the C.J.A., allow a larger fee for service away from the attorney's home town than otherwise,[70] except to provide reimbursement for reasonable expenses incurred in connection therewith, and take into account the hardship attendant to such service in determining what is "fair compensation."

In Voucher No. 21, Mr. Gulley also claims compensation for time spent in preparation for and attendance at the November 22, 1968, hearing order-

---

67. Hall and Schutz were living together when arrested for participating in the same bank burglary. This was evidently Hall's only participation in the conspiracy alleged here, and his case involved the same fact and legal issues as that of Schutz.

68. Mr. Gulley is evidently not the only attorney to have trouble with Mr. Hall.

See Hall v. United States, 396 F.2d 428, 429 (10th Cir. 1968).

69. The language at the bottom of CJA Form 4 and in CJA Form 5 echoes this view.

70. *Cf.* notes 55–57, *supra*, and accompanying text.

ed by the Court in connection with these Vouchers. This claim must be disallowed. The hearing, while it did benefit the Court, was primarily for the benefit of counsel involved. The clarification and substantiation of the claims at the hearing was beneficial only to counsel, since its only direct result was and is the Court's approval of more of the compensation and reimbursement claimed than he would otherwise have been able to do. There was *no* benefit running to the defendants in the case. Again, the whole thrust of the C.J.A. is to benefit the indigent defendant, not their counsel. The Court cannot compensate counsel under the act for time spent solely to benefit the attorney involved.

 Finally, Voucher No. 21 includes a claim for interest "at the legal rate of 6% per annum" on the amounts claimed in the other vouchers from the date they were filed until paid. It is axiomatic that interest on claims against the United States, even where payment has been unreasonably delayed, does not follow automatically upon the allowance of the claim. In the absence of constitutional requirements interest can be recovered against the United States only if expressly provided for by contract or statute.[71] The Court has been directed to, and can find, no statutory provision authorizing an award of interest on the claims here presented.[72] Even if there were such a provision, interest would surely not begin to run until the claims "matured" upon approval of the Chief Judge of this Circuit. The claim for interest, presented in Voucher No. 21 must therefore be disapproved.

Thus, Voucher No. 21 is disapproved as to all amounts therein claimed, and is attached, without the approval of the Court, to the other Vouchers.

The Court views Court's Ex. 9 as a substitution for Court's Ex. 8, amending the latter so that actual expenses are reflected rather than an arbitrary "per diem" charge for living expenses. In the event this is not correct, Court's Ex. 8 is disapproved in full,[73] and attached, without the approval of the Court, to the other Vouchers dealt with and partially approved below.

With regard to Court's Ex. 7, Mr. Gulley claims compensation for 92.2 hours of time spent in Court, at $15.00 per hour, for a total of $1,383.00. While higher than that shown in the Clerk's records, the Court cannot say that the diference cannot be explained. Schedule A, attached to the Voucher, itemizes and describes the hours claimed. Mr. Gulley next claims compensation for 112.5 hours of time spent in preparation out of court, at $10.00 per hour, for a total of $1,125.00. Each hour claimed is itemized and described either on the Voucher or in Schedules B, C, and D, attached to the Voucher. The only items specifically disapproved are the items on Schedule D described as either "Conference with co-counsel" or "Preparation for Motions Hearings,"[74] and an item on Schedule C for 8.1 hours on February 26, 1968. As to the Schedule D items, the description is inadequate as a basis for a ruling that such time was reasonably incurred. The Schedule C item seems too high, in light of the 4.3 hours of in-court time claimed in Schedule A and the 1 hour interview

---

71. United States v. Alcea Band of Tillamooks, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951) ; United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577 (1947) ; United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588, 67 S.Ct. 398, 91 L.Ed. 521 (1947) ; United States v. Goltra, 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776 (1941) ; Tillson v. United States, 100 U.S. 43, 25 L.Ed. 543 (1879) ; Steiner v. Nelson, 309 F.2d 19 (7th Cir. 1962) ; Merchants Matrix Cut Syndicate, Inc. v.

United States, 284 F.2d 456 (7th Cir. 1960) ; Gray v. Dukedom Bank, 216 F.2d 108 (6th Cir. 1954) ; Dresser v. United States, 180 F.2d 410 (10th Cir. 1950).

72. Compare 28 U.S.C. §§ 2411, 2516, 2674 ; 31 U.S.C. § 724a.

73. See Part III C, *supra.*

74. The Court also disallows one hour of an item described as "Preparation of Argument" and a 1.5 hour item described as "Installation of Copy Equipment."

claimed in Schedule B for the same day. Finally, Mr. Gulley claims reimbursement for $76.85 of expenses of representation, as itemized and described in Schedule E, attached to the Voucher. These items appear reasonably incurred in connection with the representational services rendered.

Adjusted in light of the items specifically disallowed, the total claim represented by the Voucher marked Court's Ex. 7 is $2,299.85. Further, in light of the relevant considerations set out in Part III D, *supra*, however, the Court finds that only the sum of $2,000.00 is "necessary to provide fair compensation for protracted representation" in this particular case, as that standard must be interpreted under the philosophy of the C.J.A.

Thus, the Voucher marked Court's Ex. 7 is hereby approved for payment in the sum of $2,000.00 It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

▮ With regard to Court's Ex. 9, Mr. Gulley *claims compensation for 206.0 hours of time spent in open court, at $15.-00 per hour, for a total of $3,090.00. This claim is itemized and described in Schedules A and B attached to the Voucher. Mr. Gulley further claims compensation for 169 hours of preparation out of court, at $10.00 per hour, for a total of $1,690.-00.* This claim is itemized and described in Schedules C, D, and E, also attached to the Voucher. The only items specifically disapproved are those items described on Schedule D as time spent in "Review; preparation; conferences, etc." This description is inadequate as a basis for a ruling that said time was reasonably expended.[75] Finally, Mr. Gulley claims reimbursement for $1,381.99 of expenses of representation, as itemized and described in Schedule F. These items, in general, appear to be reasonably incurred.

▮ Adjusted in light of the items specifically disallowed, the total claim

represented by the Voucher marked Court's Ex. 9 is $5,451.99. In view of the factors listed in Part III D, *supra*, however, the Court finds that only the sum of $5,000.00 is "necessary to provide fair compensation for protracted representation" in this particular case, as that standard must be interpreted under the philosophy of the C.J.A.

Thus, the Voucher marked Court's Ex. 9 is hereby approved for payment in the sum of $5,000.00. It is further certified that said amount represents fair compensation for protracted representation and, therefore, payment is necessary.

## XVI.

As pointed out in Part I, *supra*, the proceedings held in connection with these C.J.A. claims were to enable counsel involved to better present and substantiate their claims, and were helpful to both the attorneys involved and the Court. So that the Chief Judge of this Circuit may also benefit therefrom, and to provide a full record of the considerations which are reflected in this Memorandum, it is ordered that the Clerk of the Court be, and he is hereby, directed to transmit to the Chief Judge of the United States Court of Appeals for the Fifth Circuit the following:

1. A certified copy of this Memorandum and attached papers;

2. The original of the Vouchers, CJA Form 4, submitted by counsel in this case, with attached papers;

3. The original and three copies of the orders approving excess compensation, CJA Form 5, which have been signed by the undersigned with regard to each Voucher approved and which are to be submitted to the Chief Judge of this Circuit for his approval;

4. The transcript of the November 22, 1968, hearing, as certified by the official Court Reporter, and Court's Exhibit Nos. 19 and 20; and

---

75. The Court also disallows time described as "Standby" or simply "Consultation with other counsel, etc." See notes 55–57, *supra*, and accompanying text.

5. All Briefs and Memoranda of Authority submitted in connection with these Vouchers, Clerk's Docket Nos. 815–823, and 827–830, inclusive.

## APPENDIX

### PLAN FOR THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, PURSUANT TO THE CRIMINAL JUSTICE ACT OF 1964

#### PREAMBLE

The judges of the United States District Court for the Western District of Texas, as required by the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, subject to the approval of the Judicial Council of the Fifth Circuit, have adopted the following Plan, applicable to the Waco, Austin, San Antonio, Del Rio, Pecos and El Paso Divisions, for furnishing representation on behalf of defendants charged with felonies or misdemeanors, other than petty offenses as defined in 18 U.S.C. § 1, who are financially unable to obtain an adequate defense. The Act does not apply in habeas corpus cases, in proceedings to vacate sentence brought under 28 U.S.C. § 2255, or in any other proceedings of a similar character, which is collateral to the original criminal case.

Representation under this Plan shall include counsel and investigative, expert and other services necessary to an adequate defense.

The Bar has traditionally represented defendants unable to pay for counsel, without compensation. Payment for representation provided by the Act obviously does not compensate appointed attorneys in the accepted sense. The Bar will continue to perform such service primarily as officers of the Court, in keeping with the high traditions of the past, and with the knowledge that such services are rendered toward the realization of a lofty ideal, equal justice under law for all men.

#### 1. PANEL OF ATTORNEYS.

A separate panel of attorneys shall be designated for each of the Divisions of the United States District Court for the Western District of Texas, and shall consist of lawyers who are qualified and competent to provide an adequate defense for defendants under the Act. It shall be designated and approved by the United States District Judge responsible for the particular Division to which the panel is furnished. The Judge may make additions to and deletions from the panel at any time. The panel of attorneys will be maintained under the direction, supervision and with the approval of the judge, who shall determine the form it shall take and the manner in which attorneys are to be appointed therefrom.

#### 2. (a) RIGHT OF DEFENDANT TO COUNSEL.

When it appears to a Judge or United States Commissioner that a defendant is not represented by counsel, the defendant shall be promptly informed by the Commissioner or the Judge of his right to be represented by counsel at every stage of the proceedings against him, and that counsel will be appointed to represent him if he is financially unable to obtain counsel.

#### (b) DETERMINATION OF NEED FOR COUNSEL.

Whenever such a defendant states that he is financially unable to obtain counsel, and requests the appointment of counsel, it shall be the duty of the District Judge or the United States Commissioner, as the case may be, to inquire into and to make a finding as to whether such defendant is financially able to obtain counsel.

#### (c) APPOINTMENT OF COUNSEL.

If the defendant in his initial appearance before the Commissioner requests appointment of counsel and determination is made that he is entitled to the appointment of counsel, the Commissioner shall immediately notify the Judge, and the Judge shall appoint counsel from the panel to represent the defendant at all stages of the proceedings against him. In

the event the Judge is not available for any reason, the Commissioner shall proceed without delay to appoint counsel from the panel to represent the defendant in the proceedings before the United States Commissioner, and shall immediately notify the Court that such counsel has been appointed to represent the defendant.

If the defendant in his initial appearance before the Court is without counsel, the Judge shall advise the defendant of his right to counsel, in accordance with paragraph 2(a) of this Plan, and if the defendant then requests appointment of counsel, the Judge shall proceed to make a determination of the defendant's need for counsel in accordance with paragraph 2(b) of this Plan. If the Judge finds that the defendant is financially unable to obtain counsel, the Judge shall appoint counsel from the panel to represent the defendant in all proceedings before the Court.

### (d) DURATION AND SUBSTITUTION OF COUNSEL

When counsel has been appointed by the United States Commissioner, such counsel will represent the defendant in proceedings before the United States Commissioner and in all subsequent proceedings until relieved by Order of the Court. The Court may, in the interest of justice, substitute one appointed counsel for another at any stage of the proceedings.

In the event that a defendant is convicted following trial, counsel appointed hereunder shall advise the defendant of his right of appeal and of his right to counsel on appeal. If requested to do so by the defendant, counsel shall file a timely notice of appeal, and he shall continue to represent the defendant unless, or until, he is relieved by the Court of Appeals.

### (e) WAIVER OF RIGHT TO COUNSEL

The Commissioner shall notify the Court in writing if the defendant waives his right to counsel. All waivers of counsel before the Commissioner shall be in writing and signed by the defendant. Such waiver shall be filed among the papers in the case. If the defendant waives his right to counsel before the Commissioner but refuses to sign the written waiver, then the Commissioner shall certify in writing to the Judge that the defendant has been informed of all of his rights to counsel in the proceedings against him and has waived such rights, but has refused to sign the written waiver.

In the event the defendant waives counsel before the Commissioner, the Commissioner shall inform the defendant that such waiver will not prevent the defendant from requesting appointment of counsel before the Court.

### (f) DEFENDANT MAY NOT SELECT COUNSEL.

No defendant shall have the right to select his own counsel under this plan, but such selection shall be the exclusive responsibility of the Court or Commissioner, as the case may be.

### (g) SEPARATE COUNSEL.

Separate counsel shall be appointed for defendants who have such conflicting interests that they cannot properly be represented by the same counsel, or when other good cause is shown.

### (h) COURT MAY RE-EXAMINE NEED FOR COUNSEL.

The Court may re-examine the need for counsel at any time. If at any time after the appointment of counsel, the Judge finds that the defendant is financially able to employ counsel, or to make partial payment for his representation, the Judge may terminate the appointment or he may direct that such partial payment be made to the appointed counsel as provided in the Act. In this connection, appointed counsel shall report to the Court any situation coming to his attention where a defendant appears to be able to finance a portion of his defense.

### (i) NOTICE TO DEFENDANT AND COUNSEL.

When counsel is appointed to represent a defendant, the United States Attorney, the lawyer appointed, and the defendant shall be immediately notified, and the appointed lawyer and the defendant will be instructed to contact each other promptly.

### 3. SERVICES OTHER THAN COUNSEL.

If counsel for a defendant believes it necessary to obtain investigative, expert or other services necessary to an adequate defense, and the defendant is financially unable to incur the expense for such services, he shall petition the Court for permission to incur such expenses, setting forth the necessity, the person or persons to be engaged, and the estimated amount of such expenses, made by the person or persons to be engaged, submitting an appropriate Order. The Court may order a hearing upon the petition, and upon finding that the services are necessary and that the defendant is financially unable to obtain them, the Court shall authorize counsel to obtain such services. The Court may, in its discretion, establish a limit on the amount to be expended for such services. Inquiry should be made, however, to determine if reasonable stipulations may be made to avoid expenses. Any claim for compensation for such services shall be filed by defendant's attorney and shall be supported by an affidavit by the person or persons furnishing the service, specifying the time expended, services rendered, and expenses incurred on behalf of the defendant. All such claims must be approved by the Court. Applications for the ratification of expenses incurred without Court approval will not be looked upon with favor except in most unusual situations.

### 4. COMPENSATION OF COUNSEL.

When an attorney is appointed by the Court to represent a defendant, he shall keep a record of the hours spent in Court and out of Court in working on his appointed case. At the completion of his case before the United States District Court, the appointed counsel shall complete all forms required by the Court or the Administrative Office of the United States Court, and timely file his claim for compensation and reimbursement. This claim must be supported by a written statement specifying the time expended, services rendered, expenses incurred, and the compensation and reimbursement applied for and received in the same case from any other source, while the case was pending before the United States Commissioner and the United States District Court. The Court, after this presentation, shall fix the compensation and reimbursement to be paid to the attorney.

Except as authorized or directed by the Court, no appointed attorney and no person or organization authorized by the Court to render investigative, expert or other services, may request or accept any payment or promise of payment from any other source for representing or assisting in the representation of a defendant.

### 5. FORWARDING APPROVED STATEMENTS.

The Clerk shall forward all approved statements to the Administrative Office of the United States Courts for payment.

The disbursement of funds under the Act shall be in accordance with the plan of central disbursement approved by the Judicial Conference, and the forms prescribed by the Director of the Administrative Office shall be used in complying with the requirements of the Act.

### 6. EFFECTIVE DATE.

This plan shall become effective on August 20, 1965, after approval by the Judicial Counsel of the Fifth Circuit.

ADOPTED by the Judges of this Court on February 2, 1965.

Adrian A. Spears, Chief Judge.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

UNITED STATES OF AMERICA ⎫
v. ⎬ CR-67-421-DR
JERRY RAY JAMES, ET AL ⎭

### ORDER SETTING HEARING ON CRIMINAL JUSTICE ACT CLAIMS

An evidentiary hearing is set for Wednesday, October 9, 1968, at 10:00 a. m., on claims of counsel submitted to the Court for approval under the terms of the Criminal Justice Act.

The United States Attorney Ernest Morgan and Assistant United States Attorney Ralph Harris, III will appear in behalf of the United States of America.

The Clerk will notify counsel claimants and counsel for the government of the hearing.

IT IS, ACCORDINGLY, SO ORDERED.

Entered this 20th day of September, 1968.

D. W. Suttle

(s) ————————————————
United States District Judge

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 26375

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY RAY JAMES, CHESTER ARTHUR SCHUTZ,
CLIFFORD HENRY BOWEN, JAMES TIMOTHY OVERTON,
BENJAMIN THOMAS TISDALE, and DALE NORWOOD HALL,

Defendants-Appellants.

— — — —

Appeals from the United States District Court for the
Western District of Texas

— — — —

ORDER:

IT IS ORDERED that the motion of Fred A. Semaan, Esquire, to
withdraw as Court-Appointed Counsel for appellants, James Timothy
Overton and Clifford Henry Bowen, filed in the above styled and num-
bered cause, is hereby GRANTED.

IT IS FURTHER ORDERED that new counsel be appointed to
represent these appellants in this proceeding.

/s/ DAVID W. DYER

UNITED STATES CIRCUIT JUDGE

(ORIGINAL FILED—JANUARY 7, 1969).

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

UNITED STATES OF AMERICA
v. CR-67-421-DR
CLIFFORD HENRY BOWEN

### WAIVER OF CLAIM FOR COMPENSATION AND EXPENSES OF APPOINTED COUNSEL

Now comes Fred A. Semaan, heretofore appointed by the Court to represent Clifford Henry Bowen, and although claim has heretofore been filed by counsel for compensation for services and reimbursement of expenses the same is hereby now abandoned and waived.

WHEREFORE, premises considered, counsel prays that he be discharged from any further matters incident to claims for compensation and reimbursement of expenses under the terms of the Criminal Justice Act and be excused from any hearings thereon.

This abandonment and waiver of claim for compensation is understood to be not binding on the Court and the defendant, Clifford Henry Bowen, until the Fifth Circuit Court of Appeals has either appointed the undersigned to represent the said Clifford Henry Bowen or shall have excused him from further representation of said defendant, Clifford Henry Bowen.

Signed this 22nd day of November, 1968.

Fred A. Semaan
(s) ———————————————

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

UNITED STATES OF AMERICA ⎫
v. ⎬ CR-67-421-DR
CLIFFORD HENRY BOWEN ⎭

### ORDER APPROVING WAIVER OF CLAIM FOR COMPENSATION AND EXPENSES OF APPOINTED COUNSEL

The Court, having considered the Waiver of Claim for Compensation and Expenses of Appointed Counsel filed in the above styled and numbered case on this date by counsel Fred A. Semaan, finds that such waiver should be entered.

It is therefore ORDERED that appointed counsel, Fred A. Semaan, be, and he is hereby, discharged from any further matters incident to claims for compensation and expenses under the terms of the Criminal Justice Act at the trial court level in this case; provided, however, since Notice of Appeal has been filed by counsel in behalf of the defendant, Clifford Henry Bowen, said counsel shall continue to represent the defendant on appeal unless, or until, he is relieved by the Court of Appeals.

Entered this 22nd day of November, 1968.

D. W. Suttle

(s) _____
United States District Judge

**Prior Order on Motion of Mr. Knickerbocker**

V. F. Knickerbocker, Esq., counsel herein for the defendants Fred Clinton Hedges and Benjamin Thomas Tisdale, moves this Court to appoint him to represent these same defendants under the Criminal Justice Act, 18 U.S.C. § 3006A(c). Both defendants attest to the allegation in the motion that they are unable to further pay movant for his continued service in this case. The Court finds that while the Criminal Justice Act of 1964 was meant to assure representation of indigent defendants on a basis which would alleviate the burden of individual lawyers, it was not intended to eliminate the burden by paying fees which the defendant might have paid had he not become indigent before or during the proceedings. It cannot be used to pay an attorney who took the case with open eyes, knowing at the time that his client was indigent. Allowing compensation under this Act in such circumstances would open the door to indigent defendants choosing the lawyer whom they wanted, from any division or district they chose, and having the attorney appointed after he made his appearance in the case. Nor can the Act be used to "bail out" an attorney who failed to make adequate arrangements before accepting the representation of a criminal defendant. Again, the prime purpose of the Act is to protect indigent defendants and not to compensate members of the bar representing indigent defendants. The motion must be, and the same is, hereby, DENIED.

It is ORDERED, however, that these defendants be allowed to proceed in forma pauperis in this case, under 28 U.S.C. § 1915, without the payment of costs in this Court, and the Clerk is hereby so directed.

———

Chief Judge JOHN R. BROWN of the United States Court of Appeals for the Fifth Circuit has approved each allowance of compensation reflected in the preceding matters.